Filed 7/20/26  Theta Delta Chi v. Hicks CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THETA DELTA CHI CHAPTER AT STANFORD UNIVERSITY,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MONA HICKS et al.,<br><br>    Defendants and Respondents. | H051985<br>(Santa Clara County<br>Super. Ct. No. 22CV398711) |

In January 2020, a student at Stanford University (Stanford or the university) died from fentanyl toxicity at the Theta Delta Chi (TDX) fraternity house.  Following an investigation, Stanford imposed penalties on the local TDX chapter of the fraternity (Stanford TDX), including a four-year loss of recognition at the university and a six-year housing ban.  After Stanford TDX exhausted its administrative remedies, a petition for writ of mandate was filed against the university, purportedly brought by Stanford TDX, alleging violations of due process during the investigation, and seeking to set aside the university's findings and penalties.

From the outset of the litigation, defendants questioned whether Stanford TDX had actually authorized and brought the lawsuit—or whether it in fact had been brought by someone else, such as alumni who were not members of Stanford TDX at the time of the investigation and penalties, and who were not authorized to represent Stanford TDX, and therefore lacked standing.

Plaintiff contended that it was, in fact, Stanford TDX, which consisted of both current members and alumni, thus satisfying the requirements for standing.

Following briefing on the merits, the trial court denied the petition on the ground that plaintiff had failed to prove standing. According to the trial court, at the time plaintiff filed its opening brief, it had only identified three alumni from the classes of 1974 and 1991 as individuals with authority to act on its behalf, and they did not have a sufficient beneficial interest to seek judicial review. In addition, the court rejected what it characterized as plaintiff's belated and unjustified attempt to submit new evidence in support of its reply brief purporting to identify current Stanford TDX members who had authorized and brought the lawsuit.

On appeal, plaintiff argues, among other things, that it produced sufficient evidence showing the action was brought by Stanford TDX through its current members, not merely alumni, thereby establishing standing.

We find there was no evidence that Stanford TDX authorized this lawsuit to be brought on its behalf and, to the extent there was any such evidence, it was not uncontradicted or unimpeached. As a result, plaintiff failed to carry its burden of pleading and proving standing, and we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Death and subsequent investigation

Shortly after the student's death in January 2020, a residential education staff member expressed concern to Stanford's organization conduct board (OCB) about illicit substances in the Stanford TDX house and the possibility that Stanford TDX leadership and student staff had been aware of the substances. In response, the OCB opened an investigation into the allegations and possible violations of university policies by Stanford TDX.

In September 2020, the investigator—an attorney from Stanford's office of general counsel—issued a report to the university's office of community standards

2

(OCS), in which she concluded that members of Stanford TDX leadership had been aware the victim had ordered and received illicit substances at the Stanford TDX house, that student staff knew the substances had been in the house prior to his death but failed to notify the university or law enforcement, and that possession and use of marijuana in the house was widely known and undisputed.

### B. *Charges, penalties and administrative appeals*

The following month, the director of the OCS notified Stanford TDX—by letter addressed to the Stanford TDX president at the time—that there was sufficient evidence to warrant referral to an OCB panel to determine whether Stanford TDX had violated certain university policies and standards. The letter specified that the Stanford TDX president "will serve as the representative for [Stanford TDX]," and could select "one additional officer from your organization to serve as a representative."

In January 2021, OCB issued a report after conducting a panel review hearing, in which it found Stanford TDX responsible for the alleged violations of university policies and standards, and recommended various penalties, including loss of university housing privileges.

In response to that recommendation, Mona Hicks, Stanford's senior associate vice provost and dean of students, determined in March 2021 that Stanford TDX would lose university recognition for six years, including loss of all privileges accorded to a registered student organization.

In April 2021, Stanford TDX filed an administrative appeal of that decision to Susie Brubaker-Cole, the vice provost of student affairs. Stanford TDX argued, among other things, that Stanford's investigative process violated its own procedural requirements and Stanford TDX's due process as a result. Further, it argued that it had not received relevant evidence during the investigative process and had been precluded from confronting witnesses; that there had been no organizational activity by the fraternity, but rather only by the victim and his roommates; that the facts had not been

3

fairly assessed; and that the sanctions were excessive and not based on the university's own required criteria.

In connection with its administrative appeal, Stanford TDX submitted letters of support from: Brian Bertges, the CEO of TDX's national organization, with whom Stanford TDX had been working on the appeal process; Samer Hamadeh, class of 1991 and the leader of Stanford TDX alumni, who "has been working closely with [Stanford TDX] throughout this process"; roughly 40 letters from additional Stanford TDX alumni; and approximately 15 letters from then-current members of Stanford TDX.

Stanford TDX proposed its own four-year reform plan, and asked the university to vacate its decision, restore the organization's good standing, and allow them to work with the national organization and alumni "to build a better organization."

In June 2021, Brubaker-Cole informed Stanford TDX that she was denying its administrative appeal and upholding the "framework for administrative actions" recommended by Hicks in March 2021, "including loss of recognition, effective immediately." Brubaker-Cole nevertheless considered modifying Hicks' recommendation by "imposing a period for educational activities after regaining recognition before [Stanford TDX] would be eligible to apply for housing."

The following year, in July 2022, Brubaker-Cole provided her "final determination of administrative actions," determining that Stanford TDX would be ineligible for university recognition for a period of four years—ending in the spring quarter of 2025—and would remain ineligible for chapter housing for an additional two years after regaining recognition.

### C. *Petition for writ of mandate*

The petition for writ of mandate in this action was filed on May 4, 2022 (petition), pursuant to Code of Civil Procedure sections 1094.5 and 1085, naming Hicks, Brubaker-

4

Cole, and Stanford as defendants.[1] The petition alleged that it was brought by the Theta Delta Chi Chapter at Stanford University, an unincorporated association and "an aggrieved university fraternity chapter by their members and alumni."

The petition also alleged that defendants had failed to grant Stanford TDX a fair hearing, that the final decision was not supported by the findings, and that the findings were not supported by the evidence. It thus sought a writ of mandate directing defendants to set aside the findings and interim suspension.

The verification of the petition submitted by plaintiff's attorney stated: "I am the attorney for [plaintiff] in this action. Such party is absent from the county where this action is pending. I make this verification for and on behalf of that party for the reason pursuant to California Code Civ. Proc., § 446."

### D. Challenges to standing and motion regarding administrative record

Shortly after the petition was filed, the parties discussed the scope of the administrative record, the possible need for a protective order, and the identities of plaintiff's members. Defendants took the position that certain privacy laws required Stanford to redact student information from the record and obtain a protective order. To accomplish that, defendants contended, they needed specific information from plaintiff about precisely who its members were. That information would also enable defendants to assess whether plaintiff had standing to bring the action, they argued. Plaintiff's counsel took the position that a protective order and redacted record were unnecessary because the student names were already public.

In August 2022, defendants' counsel addressed the issue of standing in an e-mail to plaintiff's counsel: "We need to know the individuals who make up the unincorporated association that filed the petition. Can you provide a list of those persons, both for purposes of the protective order and to include in the administrative record?"

---

[1] The petition was thus filed before Stanford issued its final determination in July 2022.

Defendants raised the issue again in their case management conference statement filed in September 2022. There, they stated their intent to challenge plaintiff's standing "as an unincorporated association," and their desire to add information to the administrative record regarding plaintiff's identity. Defendants explained that it was unclear to them "whether or how the unincorporated association is related to the recognized local chapter that was the subject of the administrative action."

In a follow-up e-mail to plaintiff's counsel later that month, defendants' counsel reiterated that they intended to bring a standing challenge, and requested documentation supporting the assertion that the unincorporated association which plaintiff's counsel represents is actually the authorized chapter of the national TDX fraternity on Stanford's campus. Counsel asked: "Will you provide documentation to add to the record showing that your client is the same entity that the national Theta Delta Chi fraternity authorized on Stanford's campus and that was the subject of the OCB action?"

After the parties failed to reach agreement, defendants filed a motion in October 2022, seeking a court order requiring a redacted record and requiring plaintiff to provide a list of its members. They reiterated their concern that they did "not know who is suing [them] here." Instead, they argued, plaintiff "alleges variously that it is an 'unincorporated association' consisting of alumni and members and that it is 'an authorized Chapter of the national fraternity Theta Delta Chi." Defendants explained that they were "concerned that the actual student and former student members of the formerly recognized [Stanford TDX]—which were the individuals involved in the underlying disciplinary procedure and therefore have standing to bring a mandamus action regarding that procedure—are not the same as the alumni and members of the 'unincorporated association' that brought this suit." Further, they argued, "the entity that was subject to the OCB proceedings was not an 'unincorporated association' of alumni and members— it was [Stanford TDX], which participated in the OCB proceedings through its individual student representatives."

6

In its opposition to the motion, plaintiff reiterated that it was an unincorporated association, as pleaded in the petition: "[Stanford TDX], which does not appear to have been formed as a business entity, seems best described as an unincorporated association." With respect to standing, plaintiff argued that Stanford TDX, "as well as hundreds of other students and former students who submitted statements in support of [Stanford TDX's] administrative appeal … have a beneficial interest in the writ of administrative mandate." Plaintiff argued that "[t]he 50 or so members of [Stanford TDX] at the time of Stanford's punitive action and the hundreds of TDX brothers sending messages of support all have a beneficial interest in the preservation of Theta Delta Chi at Stanford University."

Plaintiff also submitted various exhibits in support of its opposition, including the signature page of the administrative appeal filed on behalf of Stanford TDX, which was signed by Joseph Michael Diaz, Stanford TDX president at the time. Plaintiff also provided dozens of letters in support of Stanford TDX which had been sent to the university by alumni expressing their support for Stanford TDX during the administrative appeal process. And plaintiff included an April 2021 letter from Hamadeh to Brubaker-Cole, written on behalf of "the 1,500-strong alumni base of [Stanford TDX] in support of the [administrative appeal]," and containing messages of support from numerous Stanford TDX alumni.

The trial court held a hearing on November 23, 2022. At the beginning, the court stated: "I want to make it clear that I'm not deciding standing today. I note there were some brief mentions about standing in all of the papers. That issue is not before me today."

Notwithstanding that, the court did discuss defendants' request for an order augmenting the administrative record with the "name of the plaintiffs." Addressing plaintiff's counsel, the court asked: "[W]hat is the secrecy. Why the challenge with providing the name of the plaintiffs to the [defendants]?"

7

Counsel responded: "There is zero secrecy. They know who the people are. They are listed in our opposition. They are listed in correspondence with Stanford. Stanford knows it's the local chapter that they have recognized for years, which is essentially the name of an unincorporated group of individuals that identify as the campus chapter. [¶] The campus chapter's best description is an unincorporated association. It doesn't have a business form. It's a group of individuals that has no business form. They have a list of hundreds of people that are part of the -- that are supporting this effort and have a beneficial interest in the outcome."

When the trial court asked counsel why it was a secret as to whether he has "somebody with authority to act on behalf of [Stanford TDX] who has engaged you," counsel responded: "It is not a secret. It has been disclosed to them. They have it. It's in the opposition. It lists Vince Lawler. It lists [Hamadeh], and it lists Buck Schott, and then there's dozens of others. Those haven't [not] been disclosed. … There is no secret."[2]

In closing, the court reiterated that it was not making an order on that issue, but it also advised plaintiff's counsel that "it will be helpful at some point for the court to have specific information about who it is that is acting on behalf of the chapter. [¶] I hear what you're saying, [counsel]. I don't think it's as clear as you think it is. Simply attaching supportive letters doesn't mean that those folks have engaged you and that those are the folks who are actually before the court, but I'm not going to make an order that you have to list those people today."

Counsel responded: "I understand, Your Honor. I understand the court's interest, and we will formalize, but this same group has been in considerable discussion with

---

[2] Lawler is listed in Hamadeh's April 2021 letter as a member of the alumni association from the class of 1991; there does not appear to be any reference to "Buck Schott" in the administrative record in this case, although a "Charles Schott" is named as a member from the class of 1974 and one of the authors of a 2022 memorandum from the alumni association to Brubaker-Cole regarding Stanford TDX's status at the university, which was attached as an exhibit to plaintiff's counsel's declaration in support of its opposition to defendants' motion.

Stanford for months going back and forth. I will go ahead and we will—I understand the court's position and appreciate it, Your Honor. Thank you."

Following the hearing, the trial court issued an order in December 2022, granting defendants' request to serve a redacted administrative record, but denying their request that plaintiff augment the record to identify its members or constituents.

### E. Answer

Defendants filed their answer to the petition in January 2023.

In a preliminary statement, defendants restated their concerns regarding plaintiff's identity: "[plaintiff], which purports to be an unincorporated association, has not yet provided information about each of its constituent members, the natural persons bringing this litigation, or the relationship between [plaintiff] and the students who were members of the Theta Delta Chi Chapter at the time of the underlying proceeding. Accordingly, [defendants] lack sufficient knowledge and information to form a belief regarding certain allegations involving who '[plaintiff]' actually is, as reflected in [defendants'] answer below."

Defendants also set forth an affirmative defense as to standing, in which they asserted that, while plaintiff had alleged it is an unincorporated association, "such associations only have standing to bring suit on behalf of its [sic] members when its members would otherwise have standing to sue in their own right, the interests it seeks to protect are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the proceeding." Defendants alleged that plaintiff's counsel "has only disclosed the identity of three alumni members of the alleged unincorporated association, none of whom were student members of [Stanford TDX] during the proceeding complained of in the Petition," and that those alumni members "lack standing to sue in their own right."

In addition, they alleged, "despite repeated requests to plaintiff, no information has been provided regarding each of the constituent members of the unincorporated

9

association or its purpose," and "if any of [plaintiff's] members were student members of [Stanford TDX] at the time of the underlying proceeding and/or are current students, they would be required to participate in the proceedings—including if remand to Stanford for further proceedings is ordered by the Court."

## F. Briefing

The matter proceeded to briefing on the merits between April and June 2023. In its opening brief, plaintiff did not address the issue of standing, the identities of its members, or who authorized the lawsuit to be filed on behalf of Stanford TDX.

In their opposition brief, defendants chiefly argued that plaintiff had failed to carry its burden of establishing standing, so the trial court lacked jurisdiction to adjudicate the merits of the petition. They first claimed that plaintiff had only ever provided the names of three alumni, one who graduated in 1973 and two who graduated in 1991, but had otherwise provided no additional information following the trial court's comments at the November 2022 hearing where it had communicated its concerns to counsel about plaintiff's identity and standing.

Defendants also offered their own theory of plaintiff's identity: "[b]ased on the limited information available to it, Stanford believes that plaintiff is a small group of alumni and not [Stanford TDX] (or even student members of that Chapter)." Defendants claimed the alumni were suing as Stanford TDX, "describing it as an unincorporated association, because they know that only that Chapter (through the National Fraternity that issued its charter) and its then student members who went through the disciplinary process and lost formal recognition and fraternity housing in 2021 would have standing to bring this action." However, defendants argued, "there has been no showing that [Stanford TDX] or any student members are involved. To the contrary, the only individuals identified by counsel as the members of the alleged association, and from whom he concedes he is taking direction in this action, are three alumni who graduated decades ago from Stanford and who have no current need for Stanford housing."

10

In support of those assertions, defendants submitted a declaration with exhibits of a press release from a group called #SaveStanfordTDX, which stated that " '[a]lumni of [Stanford TDX] have filed a lawsuit against the school,' describing the Petition as an '**alumni** lawsuit,' and stating that the '**alumni group** asserts' challenges to the OCB proceeding." Another exhibit consisted of pages allegedly from a #SaveStanfordTDX website stating that the group was formed in 2022, even though Hamadeh had signed a letter in 2021 on behalf of a differently named "Stanford Theta Delta Chi Alumni Association."

Defendants also argued that the alumni did not have standing as individuals because they were not members of Stanford TDX when it was suspended and lost housing, and that "a general interest in the continuation of [Stanford TDX] at Stanford University is not sufficient to establish standing." Nor did plaintiff establish standing as an association, they argued, because it inconsistently claimed to be acting through members and alumni of Stanford TDX, while also referring to itself as an authorized chapter of the national TDX fraternity. According to defendants, plaintiff cannot be both an alumni group and Stanford TDX. Moreover, they argued, neither of those groups has associational standing anyway.

In its reply brief, plaintiff asserted that it was in fact Stanford TDX, the recognized student organization at Stanford which was penalized and which sought to set aside defendants' final administrative decision. It argued that it was asserting its own right to continue to be recognized by Stanford, and that "[a]ssistance provided to [Stanford TDX] by Stanford alumni, by TDX alumni, or by members of the public are of no consequence to [Stanford TDX's] standing to seek writ relief for [defendants'] actions against [Stanford TDX]."

Plaintiff objected to defendants' contention that it was "nothing more than an alumni group," which was based "on a press release, website verbiage, and news reports." Plaintiff acknowledged that it had alleged it was "an aggrieved university

11

fraternity chapter by their members and alumni," but argued that it was "necessarily so because the Chapter was suspended; as such, its members were technically no longer members." Also, many Stanford TDX members had graduated between the end of the administrative action and the filing of the petition, thereby becoming alumni.

Plaintiff also submitted a declaration from Diaz, the most recent duly elected Stanford TDX president who had signed the administrative appeal. Diaz declared that he had worked with alumni advisors and legal counsel to submit the administrative appeal of Stanford's final decision, which appeal he ultimately signed. In addition, he stated that, after Stanford denied the appeal, he and other active Stanford TDX members again worked with alumni and legal counsel to prepare and file the petition, which he "agreed with and approved … on behalf of [plaintiff] [Stanford TDX]."

Finally, plaintiff submitted a declaration from Bertges, who identified himself as the executive director of the Theta Delta Chi International Fraternity. Bertges stated that Stanford TDX has been an authorized chapter of the international fraternity since 1903. He attached an exhibit of the earliest request by Stanford University students to be recognized as a chapter of the fraternity, and a copy of a 2021 issue of "the Shield of Theta Delta Chi," a publication of TDX, which listed Diaz for Stanford TDX in its "directory of active charges," alumni associations, and house corporations.

The trial court then authorized defendants to file a sur-reply to respond to what they characterized as new arguments and new evidence that had been presented in plaintiff's reply brief and the supporting declarations. In their sur-reply, defendants reiterated their argument that "the individuals who filed the Petition are **not** students who were members of [Stanford TDX] at the time of the challenged disciplinary proceedings, but rather a small alumni group that has been prosecuting a claim that is not theirs to pursue."

In addition, they argued that the trial court should not consider plaintiff's new arguments and new evidence because plaintiff "improperly held back its argument and

12

evidence on the standing issue until its Reply." Defendants also contended that the new arguments and evidence were inconsistent with prior allegations and representations to the trial court, so they should not be given any weight. Finally, they argued that, even if plaintiff could plausibly be construed as Stanford TDX—consisting only of student members, but not alumni—it would still not have standing because the elements required to establish associational standing were lacking.

Plaintiff then sought leave to file a sur-reply of its own, which the trial court denied.

### G. Hearing and order

The hearing on the merits was held on July 10, 2023. At the conclusion of the hearing, the court denied the petition on the ground that plaintiff had failed to carry its burden of proving standing.

Several months later, in February 2024, the court issued a written order denying the petition (order), in which it stated that, although no party had requested a statement of decision, the court had elected to prepare one to "provide its rationale and findings with respect to the ruling on standing."

The court began by reciting its factual findings. It found that defendants had "repeatedly throughout the case requested that plaintiff identify its constituent members and, in particular, any student members who were in the Chapter house at the time of the challenged decision (both for standing reasons and for Family Educational Rights and Privacy Act ('FERPA' redaction reasons)." The court noted that, in a previous discussion about who had engaged plaintiff's counsel, plaintiff had mentioned three alumni members, but had not identified by name any active member of Stanford TDX. At that earlier hearing, although the standing issue was not before the court, plaintiff's counsel said he would " 'formalize' the information on standing." And, at various case management conferences after that, the court had communicated its understanding that plaintiff had the burden to plead and prove standing, but that "it was not yet clear from

the record what individual or individuals were put forth to establish standing." Despite those discussions, plaintiff did not address standing in its opening brief or seek leave to amend the petition to properly allege standing. Instead, it was only in its reply brief that plaintiff addressed the issue.

The trial court then recited the law it would apply, noting that plaintiff had described itself "as an unincorporated association composed of both student members and alumni." The court added that, "[a]n unincorporated association will have standing to sue on behalf of its members only when: '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit [*Driving School Association v. San Mateo Union High School District* (1992) 11 Cal.App.4th 1513, 1517]."

The threshold question for the court, then, was the standing of the association's members as individuals. The trial court found that plaintiff "had only ever identified by name three alumni from the classes of 1974 and 1991 as individuals with authority to act on behalf of plaintiff." Yet the alumni could not claim standing "simply because they are supporting actual [Stanford TDX] members or seeking something that might benefit them and future members," the court held. "The fact that some of these same [Stanford TDX] alumni had submitted letters in support of [Stanford TDX] when it appealed the loss of recognition and housing does not establish standing for the alumni since a general interest in the continuation of [Stanford TDX] is not a sufficient beneficial interest to seek judicial review."

The trial court also relied on the attorney verification filed with the petition in the action, stating: "[i]f [plaintiff] really was [Stanford TDX] composed of active student members on Stanford's campus, and not an alumni group directed by three alumni from the classes of 1974 and 1991 or some other group, [plaintiff's] counsel could not

14

legitimately state under penalty of perjury in May 2022 that the '[plaintiff,]' THETA DELTA CHI Chapter at [Stanford] University, is absent from Santa Clara County."

Based on those determinations, the court held that, at the time defendants had submitted their opposition brief, plaintiff had failed to establish standing: "The identification of the three alumni directing the case was not sufficient to establish that any individual active member of the plaintiff association had standing, much less that the plaintiff association itself had standing to sue in its own name. No evidence was provided by plaintiff on the other two prongs of the associational standing test (the purpose and governing principles of the association and whether any individual members would need to participate in the proceedings). The Court denies the Petition on that ground."

The trial court also addressed what it characterized as "new arguments" and new evidence presented in plaintiff's reply brief: "After [defendants] submitted their Opposition, [plaintiff] cited in its Reply Brief to the student members of [Stanford TDX] listed in its 54-page administrative appeal with 246 pages of attachments, filed by its President Joseph Michael Diaz, and to the [Stanford TDX] roster, and submitted a declaration by the [Stanford TDX] president at the time of the appeal of the OCB decision." The court stated that it would not "allow an ambush with a new argument and evidence on reply," especially where the court had "told [plaintiff] of its concerns about standing and reminded [plaintiff] of the need to establish standing." In conclusion, the court stated that "[t]here is no excuse for [plaintiff's] refusal to provide the necessary information to assess standing and to timely and fairly shoulder its burden to establish it. The Court need not and will not admit and consider the new argument and declarations submitted on standing in the Reply."

Moreover, the court stated, even if it were to accept the new evidence and arguments, they would not establish standing for plaintiff, because the court found them inconsistent with the allegations in the petition, and thus lacking in credibility. For instance, plaintiff argued in its reply brief that it "does not have alumni members, *i.e.,*

15

that plaintiff is comprised of those students who were at Stanford at the time of the challenged action and that they are being supported by the alumni." With respect to the proffered Diaz declaration, the court noted that, while he claimed he authorized the filing of the petition, plaintiff had never mentioned him or any other student when previously asked who was authorized to act on behalf of Stanford TDX.

Even aside from the credibility concerns, the court explained, the Diaz declaration failed to establish standing because it did not state that Stanford TDX had authorized the filing of the petition, and did not address all the elements required to establish associational standing.

### H. Appeal

The record does not include any judgment entered after the order was filed on February 6, 2024, nor does it include any proof of service of the order or entry of order.

Nevertheless, a reviewing court may deem an order to be the "judgment" under certain circumstances, "such as when the ruling is sufficiently final to constitute the one judgment in the case, to promote judicial economy, to preserve a party's right to appeal, and to permit appellate review on the merits." (*Meinhardt v. City of Sunnyvale* (2024) 16 Cal.5th 643, 654–655 (*Meinhardt*), citations omitted.)

Reviewing courts have taken that approach "in the context of administrative mandate proceedings as well." (*Meinhardt, supra*, 16 Cal.5th at p. 655, citing *Tomra Pacific, Inc. v. Chiang* (2011) 199 Cal.App.4th 463, 481–482 ["We note that the order denying the petitions for a writ of mandate is not termed a judgment and does not explicitly address the declaratory relief causes of action. Nevertheless, we are satisfied that the order before us constitutes an appealable final judgment as it left no issue for further consideration."].)

We elect to follow that approach here and treat the order as a final appealable judgment.

Plaintiff timely appealed from the order on April 5, 2024.

16

## II. DISCUSSION

Plaintiff presents four main arguments on appeal: (1) Plaintiff is Stanford TDX, and has standing as an unincorporated association to sue on behalf of its members; (2) Stanford TDX has standing on its own as a real party in interest because the university's action adversely affected it directly; (3) the trial court erred in its interpretation of standing requirements; and (4) even if Stanford TDX lacks a beneficial interest, it should be allowed to bring the action under the public interest exception.

As we explain below, we conclude there is no evidence that Stanford TDX authorized this lawsuit to be brought on its behalf and, as a result, plaintiff failed to carry its burden of establishing standing.

### A. Standard of review

Standing is a question of law reviewed independently. (*United Farmers Agents Association, Inc. v. Farmers Group, Inc.* (2019) 32 Cal.App.5th 478, 488 (*United Farmers*), citing *San Luis Rey Racing, Inc. v. California Horse Racing Bd.* (2017) 15 Cal.App.5th 67, 73.)

Notwithstanding that, where a trial court made underlying factual findings relevant to standing, those findings are generally reviewed for substantial evidence. (*United Farmers, supra*, 32 Cal.App.5th at p. 488.) However, where a trial court found that the plaintiff failed to carry its burden of proof on a factual issue, "the question is more properly stated not in terms of substantial evidence, but rather 'whether the [plaintiff's] evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*San Diegans for Open Government v. Fonseca* (2021) 64 Cal.App.5th 426, 436 (*Fonseca*), citing *In re I.W.* (2009) 180 Cal.App.4th 1517, 1528 ["noting in a 'case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the

17

judgment ... because such a characterization is conceptually one that allows an attack on (1) the evidence supporting the party who had no burden of proof, and (2) the trier of fact's unassailable conclusion that the party with the burden did not prove one or more elements of the case' "], disapproved on another ground as stated in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.)

Stated differently, " 'where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the [plaintiff] as a matter of law." ' " (*In re Marriage of Diamond* (2024) 106 Cal.App.5th 550, 566, quoting *Juen v. Alain Pinel Realtors, Inc.* (2019) 32 Cal.App.5th 972, 978–979.)[3]

### B. Applicable law

#### 1. Standing

For a party to have standing to petition for a writ of mandate, it must have a "beneficial interest" in the litigation.[4] (*Respect Life South San Francisco v. City of South San Francisco* (2017) 15 Cal.App.5th 449, 453–454 (*Respect Life*), citing *Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 165 (*Save the Plastic Bag*); Code Civ. Proc., §§ 369.5, 1086.)  " 'The requirement that a [plaintiff] be "beneficially interested" has been generally interpreted to mean that one may obtain the

---

[3] In the context of a petition for writ of mandate that includes an administrative record, we assess the evidence in the record as well as any properly admitted extra-record evidence. (See, e.g., *Western States Petroleum Association v. Superior Court* (1995) 9 Cal.4th 559 (*Western States*).)

[4] Writs of mandate may be available against certain nongovernmental entities, including private universities, to compel them or their officers to perform their legal duties. (See, e.g., *Pomona College v. Superior Court* (1996) 45 Cal.App.4th 1716, 1722, fn. 3; *Valvo v. University of Southern California* (1977) 67 Cal.App.3d 887, 896; *Anton v. San Antonio Community Hospital* (1977) 19 Cal.3d 802, 816–817, abrogated by statute on another point as stated in *Fahlen v. Sutter Center Valley Hospitals* (2014) 58 Cal.4th 655, 678, fn. 11.) Stanford has not argued that mandate is not an available remedy against it in this case, and we do not address that issue here.

writ only if the person has some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large. [Citations.]' " (*Irvine Valley College Academic Senate v. South Orange County Community College District* (2005) 129 Cal.App.4th 1482, 1488 (*Irvine Valley College*), quoting *Carsten v. Psychology Examining Com.* (1980) 27 Cal.3d 793, 796.)

The requirement for standing "is related to the requirement contained in Code of Civil Procedure section 367 that '[e]very action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute.' " (*River's Side at Washington Square Homeowners Association v. Superior Court* (2023) 88 Cal.App.5th 1209, 1225 (*River's Side*); Code Civ. Proc., § 367.) "The real party in interest is generally the person who has the right to sue under the substantive law." (*River's Side, supra*, at p. 1225, citing *Estate of Bowles* (2008) 169 Cal.App.4th 684, 690. ["A party who is not the real party in interest lacks standing to sue because the claim belongs to someone else."].)

Standing "is a threshold issue to be resolved before the matter can be reached on its merits. [Citation.] Standing goes to the existence of a cause of action [citation], and the lack of standing may be raised at any time in the proceedings.' " (*United Farmers, supra,* 32 Cal.App.5th at p. 488, citing *Apartment Association of Los Angeles County, Inc. v. City of Los Angeles* (2006) 136 Cal.App.4th 119, 128.)

A plaintiff bears the burden of alleging and establishing standing. (*Mendoza v. JPMorgan Chase Bank, N.A.* (2016) 6 Cal.App.5th 802, 810 (*Mendoza*).) A plaintiff must satisfy standing at every stage of a lawsuit, and bears the burden to "plead and prove facts showing standing." (*Tahoe Vista Concerned Citizens v. County of Placer* (2000) 81 Cal.App.4th 577, 590–591 (*Tahoe Vista*).)

### 2. *Unincorporated associations*

An entity need not be formally organized to have standing—unincorporated associations may sue and be sued as well. (*Irvine Valley College, supra*, 129 Cal.App.4th

19

at p. 1487, citing Code Civ. Proc., § 369.5.)  As with other parties, an unincorporated association has standing when it has a beneficial interest.  (*Respect Life, supra*, 15 Cal.App.5th at p. 454, citing *McKeon v. Hastings College* (1986) 185 Cal.App.3d 877, 892–893 [participation of incorporated and unincorporated associations has become common and accepted].)

An "unincorporated association" is defined in the Corporations Code as "an unincorporated group of two or more persons joined by mutual consent for a common lawful purpose, whether organized for profit or not."  (Corp. Code, § 18035, subd. (a); see also, *Vosburg v. County of Fresno* (2020) 54 Cal.App.5th 439, 452.)  " 'By statute in California, an unincorporated association possesses many characteristics of a legal entity.' "  (*Clean Air Transport Systems v. San Mateo County Transit District* (1988) 198 Cal.App.3d 576, 579 (*Clean Air*), quoting 6 Witkin, Summary of Cal. Law (8th ed. 1974) § 37, p. 4348.)

The Corporations Code sets forth many of those characteristics.  For instance, an unincorporated association's "governing principles" are defined as "the principles stated in an unincorporated association's governing documents" or, if it has none, as those which "may be inferred from its established practices."  (Corp. Code, § 18010.)

Similarly, a "member" of an unincorporated association is defined as set forth in its governing principles or, if it has none, as "a person who, pursuant to the governing principles of the unincorporated association, has a right to participate in the selection of persons authorized to manage the affairs of the unincorporated association or in the development of policy of the unincorporated association, but does not include a person who participates solely as director, officer, or agent of the association."  (Corp. Code, § 18015.)  An "officer" is defined as "a natural person serving as an unincorporated association's chair, president, secretary, chief financial officer, or other position of authority that is established pursuant to the association's governing principles."  (Corp. Code § 18025.)

In addition, the general law of agency, including that set forth in the Civil Code, applies to an unincorporated association. (Corp. Code § 18065.) Under the Civil Code, an "agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency." (Civ. Code § 2295.)

### 3. Associational standing on behalf of members

An unincorporated association thus has standing to sue in its own right when the association itself has a beneficial interest in the litigation. (*Irvine Valley College, supra*, 129 Cal.App.4th at p. 1487; *Respect Life, supra*, 15 Cal.App.5th at pp. 453–454.)

Notwithstanding that, even where an unincorporated association does not have standing in its own right, it may nevertheless have standing under the doctrine of "associational standing," thereby enabling it to bring a lawsuit on behalf of its members. (*Collins v. Thurmond* (2019) 41 Cal.App.5th 879, 920 (*Collins*), citing *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1004 (*Amalgamated Transit*) [associational standing applies "only when the plaintiff association has *not* itself suffered actual injury but is seeking to act on behalf of its members who have sustained such injury"].)

To establish associational standing, a plaintiff must satisfy three distinct elements: (1) the association's members would otherwise have standing to sue in their own right, (2) the interests the association seeks to protect are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. (*Collins, supra,* 41 Cal.App.5th at p. 920, citing *Amalgamated Transit, supra*, 46 Cal.4th at p. 1004.)

### 4. Authority to act on behalf of an unincorporated association

Duly authorized members of an unincorporated association have the right to represent the association in a representative court action. (*California Federation of Teachers v. Oxnard Elementary Schools* (1969) 272 Cal.App.2d 514, 517, fn. 1 (*California Federation*), citing *Professional Fire Fighters, Inc. v. City of Los Angeles*

(1963) 60 Cal.2d 276, 283; *International Association of Fire Fighters, Local No. 1319, AFL-CIO v. City of Palo Alto* (1963) 60 Cal.2d 295.)

An unincorporated association is a legal entity separate and apart from its members. (*Clean Air, supra,* 198 Cal.App.3d at pp. 578–579.) Where an individual or individuals purport to bring a lawsuit on behalf of an entity, they will lack standing if they cannot establish that they were properly authorized to represent the entity for purposes of the lawsuit. (*NNN Capital Fund I, LLC v. Mikles* (2026) 119 Cal.App.5th 1200 (*NNN Capital*).) Like a corporation, an unincorporated association is an artificial person and "acts through its officers, agents, or employees." (*J.R. Norton Co. v. General Teamsters, Warehousemen & Helpers Union* (1989) 208 Cal.App.3d 430, 443 (*J.R. Norton*).)

### C. *Analysis*

As we have stated, a plaintiff bears the burden of alleging and establishing standing at every stage of a lawsuit. (*Mendoza, supra,* 6 Cal.App.5th at p. 810; *Tahoe Vista, supra,* 81 Cal.App.4th at pp. 590–591.) And where a defendant denies a plaintiff's allegation that it has the authority to represent a particular entity, that puts the question at issue. (Cf., *California Federation, supra,* 272 Cal.App.2d at p. 517, fn. 1 [plaintiff assumed by implied consent the authority to represent teachers' federation; because no objection was raised, court presumed such authority as well].)

In addition, where, as here, the trial court found that the plaintiff failed to carry its burden of proof, the question for the reviewing court is whether the plaintiff's evidence was uncontradicted and unimpeached, and of such character and weight as to leave no room for a judicial determination that it was insufficient to support a finding. (*Fonseca, supra,* 64 Cal.App.5th at p. 436.)

Applying these standards in the context of the applicable laws summarized above, we must review the trial court's factual finding—that plaintiff failed to establish

standing—by assessing the evidence as to whether Stanford TDX authorized the lawsuit to be brought on its behalf.[5]

### 1. Evidence that Stanford TDX authorized this lawsuit to be brought on its behalf

In short, there is no evidence that Stanford TDX authorized this lawsuit to be brought on its behalf. Instead, the evidence goes to other issues, such as whether Stanford TDX or its members would have had standing—had they actually brought the lawsuit with the proper authorization—or whether Stanford TDX members and alumni support the lawsuit.

For instance, in its opposition to Stanford's motion regarding the administrative record filed prior to briefing on the merits in the trial court, plaintiff argued that Stanford TDX, "as well as hundreds of other students and former students who submitted statements in support of [Stanford TDX's] administrative appeal … have a beneficial interest in the writ of administrative mandate," and that "[t]he 50 or so members of [Stanford TDX] at the time of Stanford's punitive action and the hundreds of TDX brothers sending messages of support all have a beneficial interest in the preservation of Theta Delta Chi at Stanford University." In support of that argument, plaintiff submitted Diaz's signature page from the administrative appeal filed on behalf of Stanford TDX, letters of support from alumni, and the letter from Hamadeh to Brubaker-Cole, written on behalf of "the 1,500-strong alumni base of [Stanford TDX] in support of the [administrative appeal]."

---

[5] Defendants concede that Stanford TDX, or its individual members, would have had a beneficial interest and therefore sufficient standing to bring suit: "[Defendants] have never disputed that members of [Stanford TDX] at the time it lost recognition, who had to find new housing, could have brought suit individually or collectively." It is a separate question, though, whether Stanford TDX actually authorized this lawsuit to be brought on its behalf.

Yet that evidence only goes to the potential beneficial interest of Stanford TDX and its members—which defendants do not contest would have existed, had Stanford TDX actually authorized the lawsuit—or the potential beneficial interest of the alumni, which is immaterial if they were not authorized to bring the lawsuit on behalf of Stanford TDX. The evidence does not establish, or even address, how Stanford TDX authorizes any individual or individuals to act on its behalf, and how such authority was granted in this case.

Plaintiff also cites the declaration from Diaz, the most recently elected Stanford TDX president, which it submitted in support of its reply brief on the merits. However, the trial court declined to consider the declaration on the ground that it was improperly submitted "new evidence" on reply. Such an evidentiary ruling is reviewed for abuse of discretion, including in the context of deciding whether to admit extra-record evidence in a mandamus proceeding. (See, e.g., *Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 446–447, citing *People v. Rodriguez* (1999) 20 Cal.4th 1, 9–10; *Western States, supra*, 9 Cal.4th 559.)

Plaintiff argues only that the trial court's rejection of its supplemental evidence was flawed because standing "can be raised at any point in proceedings." However, the rule is actually that contentions based on a lack of standing may be raised at any time in the proceeding. (*Taking Offense v. State of California* (2025) 18 Cal.5th 891, 910, citing *Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 438.) That maxim does not entitle a plaintiff—which bears the burden of pleading and proving standing—to withhold evidence until a reply brief on the merits, especially when the issue had been squarely addressed at the outset of the litigation. Plaintiff does not otherwise argue that the trial court abused its discretion in declining to consider its evidence, so we consider the argument forfeited. (*Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 230 (*Claudio*) [review limited to issues adequately raised and briefed].)

24

Moreover, even if the trial court had admitted and considered the Diaz declaration, it would not constitute uncontradicted or unimpeached evidence that Stanford TDX authorized this lawsuit to be brought on its behalf. The trial court determined that the declaration lacked credibility because it was inconsistent with other factual assertions plaintiff had made to the court. For instance, although Diaz stated in his declaration that he "agreed with and approved the filing of the petition on behalf of [plaintiff] [Stanford TDX]," plaintiff's counsel had previously represented to the trial court—when asked whether he had "somebody with authority to act on behalf of [Stanford TDX] who has engaged you"—that the information had been disclosed to defendants, and that it was "in the opposition. It lists Vince Lawler. It lists [Hamadeh], and it lists Buck Schott, and then there's dozens of others." In other words, when asked by the court whether plaintiff had identified who authorized the lawsuit on behalf of Stanford TDX, counsel did not name Diaz. It is also a "fundamental principle that appellate courts do not reweigh facts and generally must defer to the trial court's resolution of credibility and conflicts in the evidence." (*Schneer v. Llaurado* (2015) 242 Cal.App.4th 1276, 1285, citing *People v. Brown* (2014) 59 Cal.4th 86, 106.)

Nor does the Diaz declaration itself include information showing that he was properly authorized to bring the lawsuit on behalf of Stanford TDX. It does not, for instance, explain how Stanford TDX makes decisions as an unincorporated association to determine which members, officers, or agents can act on its behalf. (*J.R. Norton, supra*, 208 Cal.App.3d at p. 443.) Nor does it demonstrate that Diaz, as the most recently elected president of Stanford TDX, was so authorized.

Plaintiff argues that "[defendants'] suggestion that the declaration failed to show Diaz's authority is belied by their own conduct," because they "treated him as the organization's president throughout the administrative proceedings," so they "cannot now pretend that they do not know who he is, or what group he represented, simply to avoid judicial review." Plaintiff misconstrues defendants' point, though. Defendants have not

denied treating Diaz as Stanford TDX's president during the administrative proceedings—nor have they claimed not to know who he is. Instead, they claimed, and the trial court found, that there was no evidence that Stanford TDX had authorized him to bring this lawsuit on its behalf.

Plaintiff similarly argues that defendants conceded in their surreply brief that the Diaz declaration "might have established his standing to sue as an individual," a concession that is fatal to their challenge. However, even if Diaz did have standing to sue in his individual capacity, it does not follow that he had the authority to bring this lawsuit on behalf of Stanford TDX, which is who plaintiff claims to be.

Plaintiff argues that the Diaz declaration "confirmed that students, not alumni, authorized the suit. Nothing about his emergence in the reply contradicts prior filings." For that reason, plaintiff argues, the declaration by itself—submitted by Diaz in his capacity as president and "attesting that he and other active members approved the filing of the Petition"—was sufficient to establish standing for Stanford TDX.

Again, though, the trial court found the declaration lacking in credibility because it contradicted other contentions plaintiff had made in the litigation. Consistent with that, we also note that elsewhere in the same brief on appeal, plaintiff cites one of its own prior statements that contradicts the Diaz declaration and its argument on appeal: "During a case management conference, plaintiff's counsel informed both the court and [defendants] that three identified alumni had authorized the Petition. …"

Plaintiff also cites the Bertges declaration it submitted in support of its reply brief in the trial court. Yet the trial court declined to consider that declaration as well, and plaintiff has forfeited any argument that the trial court abused its discretion in that regard. Nor did the Bertges declaration address who had authority to bring the lawsuit on behalf of Stanford TDX.

Lastly, plaintiff cites its attorney verification submitted with the petition in this case as well. However, the verification only stated that counsel is the "attorney for

26

plaintiff in this action," and that "[s]uch party is absent from the county where this action is pending. I make this verification for and on behalf of that party for the reason pursuant to California Code Civ. Proc., § 446." Nothing in the verification addressed whether plaintiff had the authority to bring the lawsuit on behalf of Stanford TDX, or how any such authorization was obtained. Plaintiff argues that the petition "was verified under penalty of perjury and clearly identifies [Stanford TDX] as [plaintiff]." But that merely begs the question of how plaintiff allegedly obtained the authorization to represent Stanford TDX, and there remains no evidence to support that assertion.[6]

### 2. *Plaintiff's additional arguments*

We briefly address some of plaintiff's other arguments.

First, plaintiff argues at length that "who or what the [plaintiff] association is," and who authorized the suit, are not "threshold questions of standing." According to plaintiff, because the petition identifies Stanford TDX as the plaintiff, that is legally "sufficient on its face, unless affirmatively disproven, which [defendants] have not done."

However, as the applicable law summarized above explains, having the authority to bring a lawsuit on behalf of an entity is necessarily part of satisfying the standing requirement. Merely purporting to represent an entity does not establish that one in fact has the authority to do so and, where such authority is lacking, the plaintiff cannot demonstrate a beneficial interest predicated on an injury to the entity it claims to represent.

---

[6] The trial court emphasized the fact that counsel stated in the verification that plaintiff was "absent from the county where this action is pending," and that if plaintiff "really was [Stanford TDX], composed of active student members on Stanford's campus, and not an alumni group directed by three alumni from the classes of 1974 and 1991 or some other group, [plaintiff's] counsel could not legitimately state under penalty of perjury in May 2022 that the ['plaintiff,' Stanford TDX] is absent from Santa Clara County." We need not address that finding by the trial court or otherwise assess the extent to which the verification may undermine plaintiff's assertions because we conclude that neither the verification, nor any other evidence, demonstrates that plaintiff had the authority to represent Stanford TDX.

*NNN Capital* is illustrative. In that case, two individuals purported to be the authorized representatives of a capital fund company, in their capacity as the company's liquidating trustees, and brought suit on behalf of the company against various entities for breach of fiduciary duty and fraud. (*NNN Capital, supra,* 119 Cal.App.5th at pp. 1204–1207.) After the matter proceeded to arbitration, resulting in a judgment in favor of the plaintiffs, the defendants appealed, arguing that the two individuals who had brought the suit had not been not authorized to represent the company because they had not been elected in accordance with the terms of the company's operating agreement, so they lacked standing. (*Ibid.*)

The court of appeal first stated that, if the individuals were not qualified to file suit on the company's behalf, "they lacked standing, and therefore neither the trial court nor the arbitrator had jurisdiction over the suit." (*NNN Capital, supra*, 119 Cal.App.5th at p. 1209.) Examining the terms of the company's operating agreement, the court held that there remained an open and unresolved dispute as to whether the two individuals had been properly elected as liquidating trustees pursuant to those terms and therefore whether they obtained the authority to bring the suit on the company's behalf. (*Id.* at pp. 1209–1213.) Accordingly, the court reversed and remanded for the trial court to make that factual determination, which is a predicate for assessing whether the plaintiffs had standing. (*Id.* at pp. 1213–1214.)

Similarly here, because there is no evidence that the individual or individuals who authorized this lawsuit and purported to be authorized representatives of Stanford TDX had that authority, they failed to establish standing.

Plaintiff argues that the allegation in the petition that it is Stanford TDX is legally sufficient unless affirmatively disproven, which defendants have not done. Again, plaintiff is incorrect. As we have explained, a plaintiff must satisfy standing at every stage of a suit, and it is the plaintiff's burden to plead and prove facts showing standing. (*Tahoe Vista, supra,* 81 Cal.App.4th at pp. 590–591.) Here, defendants denied the

28

allegation in the petition and asserted an affirmative defense regarding standing, thereby putting it squarely at issue.

Plaintiff also argues that "who retained [plaintiff's] counsel is a matter for plaintiff, not [defendants], to raise. Unless there is an internal dispute, of which there is none, [defendants] have no standing to challenge counsel's authority to represent [plaintiff]." Here, plaintiff misses the point. The question at issue is not whether *counsel* has the authority to represent plaintiff—the question is whether Stanford TDX authorized this lawsuit to be brought on its behalf by the individual or individuals who brought it, and specifically whether there was any evidence in the record to demonstrate that.

Elsewhere, plaintiff argues that Stanford TDX has standing through the doctrine of associational standing. As set forth above, to establish associational standing, a party must demonstrate that: (1) the association's members would otherwise have standing to sue in their own right, (2) the interests the association seeks to protect are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. (*Collins, supra,* 41 Cal.App.5th at p. 920.) Plaintiff argues that Stanford TDX satisfies these three elements here.

However, there is no evidence that Stanford TDX authorized this lawsuit to be brought on its behalf—as a result, plaintiff cannot establish associational standing by Stanford TDX, because it has not established that Stanford TDX is the plaintiff in the first place. In addition, the doctrine of associational standing only applies where the plaintiff association itself has not suffered actual injury, "but is seeking to act on behalf of its members who have sustained such injury." (*Amalgamated Transit, supra,* 46 Cal.4th at p. 1004.) Here, plaintiff argues that Stanford TDX itself suffered actual injury— accordingly, associational standing is not at issue.

Plaintiff similarly argues that Stanford TDX is a real party in interest "because it holds a 'substantial interest' in the administrative decision affecting its members." This,

too, would only be relevant, though, if Stanford TDX were the plaintiff and had properly authorized this lawsuit—propositions for which there is no evidence.

Lastly, plaintiff argues that Stanford's and the "trial court's assertion that [Stanford TDX] must produce a complete, unredacted membership list to establish standing is without merit." We are aware of no authority requiring a plaintiff to provide such a list, either to establish standing or otherwise. However, a plaintiff does bear the burden of pleading and proving standing, and where the plaintiff is an unincorporated association, that may include providing sufficient evidence showing that the association properly authorized a particular individual or individuals to file the lawsuit on its behalf. Because there was no such evidence here, we need not address whether plaintiff was required to provide a complete list of its members.

In sum, there is no evidence that Stanford TDX authorized this lawsuit to be brought on its behalf. As a result, plaintiff failed to carry its burden of proving standing.

### 3. *Public interest exception*

Plaintiff argues that, even if this court determines Stanford TDX does not have a beneficial interest, we should nevertheless permit plaintiff to bring the lawsuit under the public interest exception, through which a court may grant standing to parties "challenging issues of public concern that extend beyond individual interests."

The California Supreme Court has described the so-called "public interest exception" as follows: " ' "where the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the [plaintiff] need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced." ' " (*Save the Plastic Bag, supra,* 52 Cal.4th at p. 166, quoting *Board of Social Welfare v. County of Los Angeles* (1945) 27 Cal.2d 98, 100–101.) The " ' "public right / public duty" exception to the beneficial interest requirement to obtain a writ of mandate' 'promotes the policy of guaranteeing citizens the opportunity to ensure that no

30

governmental body impairs or defeats the purpose of legislation establishing a public right.' " (*Save the Plastic Bag, supra*, at p. 166, quoting *Green v. Obledo* (1981) 29 Cal.3d 126, 144–145; see also, *Loeber v. Lakeside Joint School District* (2024) 103 Cal.App.5th 552, 568 [public interest exception " ' "promotes the policy of guaranteeing citizens the opportunity to ensure that no governmental body impairs or defeats the purpose of legislation establishing a public right" ' "].)

Plaintiff states that the public interest exception is "typically applied to public entities," but argues that it "may extend to cases involving significant procedural rights and transparency in institutional governance, particularly when they impact the public welfare." However, plaintiff cites no authority for the proposition that the exception may be applied to non-governmental bodies, so we consider the contention forfeited. (*Claudio, supra,* 134 Cal.App.4th at p. 230.)

### III.    DISPOSITION

The order is affirmed. In the interests of justice, the parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

_____
                                      Wilson, J.

WE CONCUR:

_____
                  Grover, Acting P. J.

_____
                  Rodriguez, J.*

*Theta Delta Chi Chapter at Stanford University v. Hicks et al.*
H051985

---

      * Judge of the San Diego County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.